**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NATHEN RICHARD GARLEY,

    Defendant - Appellant.

No. 25-2060

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:23-CR-01485-WJ-1)**
_____

Violet N. D. Edelman, Assistant Federal Public Defender, Office of the Federal Public Defender, District of New Mexico, Albuquerque, New Mexico, for Defendant-Appellant.

Emil J. Kiehne, Assistant United States Attorney (Ryan Ellison, United States Attorney, with him on the brief), Office of the United States Attorney, District of New Mexico, Albuquerque, New Mexico, for Plaintiff-Appellee.

_____

Before **HARTZ**, **BACHARACH**, and **ROSSMAN**, Circuit Judges.
_____

**ROSSMAN**, Circuit Judge.
_____

Nathen Garley was convicted after pleading guilty to possessing fentanyl with the intent to distribute it, in violation of 21 U.S.C.

§§ 841(a)(1), (b)(1)(A). Before Mr. Garley entered his guilty plea in federal court, the State of New Mexico charged him with first-degree murder for the death of an 11-year-old boy who had been shot in Albuquerque about a week before Mr. Garley committed the instant federal offense. At the time of his federal sentencing, Mr. Garley had been convicted in state court but not yet sentenced. The district court sentenced Mr. Garley to 240 months in prison—a significant upward variance—and ordered the federal sentence to be served consecutively to the anticipated state sentence.

Mr. Garley now appeals, challenging his sentence as procedurally and substantively unreasonable. *First*, Mr. Garley contends the district court committed plain procedural error by not applying U.S.S.G. § 5G1.3(c)—which recommends imposing concurrent sentences when a state term of imprisonment is anticipated to result from another offense that is "relevant conduct" to the federal offense of conviction. We reject this argument because Mr. Garley has not shown error—let alone plain error. *Second*, Mr. Garley argues his sentence is substantively unreasonable because the district court inadequately explained its decision to vary upward. On the record before us, we cannot agree. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**[1]

On September 6, 2023, Mr. Garley and another man were involved in the fatal shooting of an 11-year-old boy in Albuquerque. The child and his family were in their car when, according to witnesses, a man in another vehicle used a rifle to shoot at them. The shots penetrated the family's car, killing the boy and injuring his mother. It later turned out Mr. Garley was the shooter. Law enforcement investigated the incident and concluded the victims had been mistakenly shot as a result of a rival gang feud.

About a week later, on September 13, 2023, Mr. Garley and his girlfriend were driving back to New Mexico from Arizona. Law enforcement stopped their vehicle for having expired car insurance. During the traffic stop, the officers smelled a strong odor of marijuana coming from the car. The officers initiated a search and found marijuana in Mr. Garley's front pocket. After searching the car, the officers discovered a large duffle bag in the trunk. Inside the bag were six plastic vacuum-sealed bundles containing blue pills. Mr. Garley was arrested. Laboratory testing confirmed the pills were fentanyl, with an estimated net weight of 10.42 kilograms (about 23 pounds).

---

[1] We derive our facts from the appellate record, particularly from Mr. Garley's unobjected-to Presentence Investigation Report (PSR). *See United States* v. *Martinez,* 82 F.4th 994, 997 & n.1 (10th Cir. 2023).

On October 4, 2023, the government indicted Mr. Garley on one count of possession with intent to distribute 400 grams or more of a mixture or substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). A little over a week after the federal charges were filed, the State of New Mexico prosecuted Mr. Garley for the shooting in Albuquerque on September 6, 2023. He was charged with first-degree murder, among other state crimes. On February 24, 2025, a jury convicted Mr. Garley in state court on all counts. His state sentencing was set for May 21, 2025.

Meanwhile, on February 6, 2025, Mr. Garley pleaded guilty to the federal indictment without a plea agreement. The Probation Office prepared a PSR, and it included an advisory Guidelines calculation, as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2D1.1(a)(5) | **34** |
| Acceptance of responsibility, U.S.S.G. § 3E1.1(a) | **-2** |
| Additional reduction for acceptance of responsibility under the plea agreement, U.S.S.G. § 3E1.1(b) | **-1** |
| **Total Offense Level:** | **31** |

The PSR counted Mr. Garley's New Mexico state offenses as part of his criminal history score under U.S.S.G. § 4A1.2(a)(4). Mr. Garley had yet to be sentenced in state court, so the PSR assigned his state case one criminal

4

history point. *Id.* §§ 4A1.1(c), 4A1.2(a)(4).[2] With no other points, Mr. Garley was in criminal history category I.

Based on these calculations, and given the applicable 10-year statutory minimum for a conviction under 21 U.S.C. § 841(b)(1)(A), the PSR arrived at an advisory Guidelines range of 120 to 135 months' imprisonment. The PSR also discussed the U.S. Sentencing Commission's Judiciary Sentencing Information statistics, showing all defendants similarly situated to Mr. Garley "received a sentence of imprisonment in whole or in part, [and] . . . the average sentence imposed was 83 month(s) and the median sentence imposed was 84 month(s)." R.Supp.27. Probation recommended a within-Guidelines sentence but identified Mr. Garley's state murder conviction as a potential ground for an upward variance under 18 U.S.C. § 3553(a). Mr. Garley filed no objections to the PSR. Neither did the government.

---

[2] U.S.S.G. § 4A1.2(a)(4) provides:

Where a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted as if it constituted a prior sentence under § 4A1.1(c) if a sentence resulting from that conviction otherwise would be countable. In the case of a conviction for an offense set forth in § 4A1.2(c)(1), apply this provision only where the sentence for such offense would be countable regardless of type or length.

Section 4A1.1(c), in turn, assigns "1 point for each prior sentence[.]" *Id.* § 4A1.1(c).

In its sentencing memorandum, the government agreed the PSR "accurately describe[d] the nature of this [federal] offense[,]" and "correctly calculated the applicable total offense level and criminal history category." RI.20. But the government requested an upward variance under § 3553(a) "to a term of 240 months['] imprisonment, to run consecutive to any term of imprisonment imposed by the state" for Mr. Garley's state murder conviction. RI.28. In support, the government emphasized that Mr. Garley was found with fentanyl pills for "over 65,800 fatal doses." RI.22. The government also referenced data in the 2024 National Drug Threat Assessment (NDTA).[3] The NDTA reported fentanyl was the leading cause of drug deaths in the United States from 2021 to 2023—resulting in more than twice as many deaths as methamphetamine.

Notwithstanding the known dangers of fentanyl, the government observed, the Guidelines still punish methamphetamine more harshly. Mr. Garley's advisory Guidelines range would have been 168 to 210 months' imprisonment (rather than 120 to 135 months), the government pointed out, "[i]f the fentanyl guidelines were brought in line with the methamphetamine (actual) guidelines[.]" RI.25 n.1. The government also

---

[3] The NDTA is an intelligence assessment of illicit drug threats in the United States produced by the Drug Enforcement Administration's Intelligence Program. *See* U.S. DEP'T OF JUST., NATIONAL DRUG THREAT ASSESSMENT, LETTER FROM THE ADMINISTRATOR (2024).

cited out-of-circuit decisions affirming upward variances based on a judge's policy disagreements with the "lenient[]" treatment of fentanyl in the Guidelines. *See* RI.24–25 (first citing *United States* v. *Cortez*, 72 F.4th 1344, 1345 (8th Cir. 2023) (affirming upward variance where district court "cogently explained its view that the guidelines generally treat fentanyl offenses too leniently"); then citing *United States* v. *Roy*, 88 F.4th 525, 532 (4th Cir. 2023) (affirming upward variance where the district court discussed "fentanyl's lethality and the devastating impact it has wrought upon communities")). Mr. Garley did not submit a sentencing memorandum.

On April 30, 2025, the district court convened a sentencing hearing. At that time, Mr. Garley was still awaiting sentencing in his state case. At the outset of the hearing, defense counsel said he had reviewed the PSR with Mr. Garley and had no objections to it. The district court then confirmed the government sought to have the federal sentence imposed consecutively to the state sentence.

The government acknowledged it was "a pretty substantial upward variance," but insisted 240 months' imprisonment was justified under the statutory sentencing factors. RIII.30. Focusing on the "nature and circumstances of the offense[,]" the government argued the Guidelines "don't really account for the dangerousness of fentanyl and the rise in

7

overdose deaths that have been occurring[.]" RIII.30. The government described "fentanyl's unique lethality," and referenced "the fentanyl epidemic[,]" observing the district court previously "made mention of this in some of its own cases[.]" RIII.30–32. "[T]his [fentanyl] crisis hits close to home[,]" the government said, and "is fueled by people just like [Mr. Garley] who are bringing in rampant amounts of fentanyl pills to be distributed all throughout" New Mexico. RIII.31.

Mr. Garley "do[es not] have much in the way of criminal history," the government admitted, but it emphasized the "shooting of the 11-year-old outside of the baseball game, something that shook the entire community and was motivated by a foolish and violent gang feud between [Mr. Garley] and other gang members." RIII.32. The government characterized the state crimes as "horrific" and Mr. Garley's response—leaving New Mexico immediately after the shooting to have a "lavish time" in Arizona—as "shockingly callus." RIII.33. The government expected Mr. Garley "to get a life sentence in state court," but urged the district court to impose a federal sentence "based on the circumstances here and not what might, or even is likely to happen[,] in the state for that other case." RIII.34–35.

Next, Mr. Garley advanced his sentencing position. He sought a sentence within the advisory Guidelines range to run concurrently with the yet-to-be-imposed state sentence. Defense counsel recognized the

8

government was seeking "a large variance" that "need[ed] to be justified within the sentencing factors in great detail[.]" RIII.36 (relying on *United States* v. *Crosby*, 119 F.4th 1239 (10th Cir. 2024)). In defense counsel's view, there was no support for such a long sentence. He addressed what he believed to be the "heart" of the government's request: "to sentence [Mr. Garley] based on a crime that he's already been convicted of in state court[.]" RIII.36. Defense counsel maintained it was not appropriate for the district court "to punish [Mr. Garley] for that state case." RIII.36. "In terms of fentanyl," defense counsel "agree[d] with everything the [g]overnment said about fentanyl being a scourge in [the] community" and "a terrible substance," but insisted the treatment of fentanyl in the Guidelines is something "the Sentencing Commission needs to address." RIII.37.

The district court adopted the PSR's "factual findings, noting there are no objections." RIII.43. And it agreed with the calculations in the PSR. The district court acknowledged Mr. Garley appropriately received only one criminal history point for his state conviction under § 4A1.2(a)(4) because he was still "awaiting sentencing in state court[.]" RIII.44. Ultimately, the district court determined Mr. Garley's advisory Guidelines range was 120 to 135 months' imprisonment.

The district court turned to the government's request for an upward variance under § 3553(a). "[I]f I was going to impose a guideline sentence,"

9

the district court explained, "a sentence on the high end of the [G]uidelines would be appropriate[.]" RIII.43. But it determined a within-Guidelines sentence was not appropriate. The district court said that, under § 3553(a)(1), it was "required to consider" whether Mr. Garley's "entire history, including his criminal history, supports any variance from the [G]uidelines, even though the history was already used to calculate [his] guideline range." RIII.45 (citing *United States* v. *Vazquez-Garcia*, 130 F.4th 891 (10th Cir. 2025)). Focusing on Mr. Garley's criminal history, the district court found "the unobjected[-]to facts set forth in the [PSR] regarding [Mr. Garley]'s state court convictions, including first[-]degree murder for the shooting of an 11-year-old boy as well as the wounding and what would appear to be permanent injury, physical injury, to the child's mother, support an upward variance." RIII.45.

The district court stressed the significance of Mr. Garley's federal offense conduct, observing it involved "over ten kilograms of fentanyl." RIII.46. The district court observed upward variances "based on the dangerousness of fentanyl" have been affirmed by other circuit courts. RIII.46–47 (first citing *United States* v. *McCrary*, 43 F.4th 1239, 1250 n.7 (10th Cir. 2022), which cited *United States* v. *Robinson*, 892 F.3d 209, 211, 215–17 (6th Cir. 2018) (affirming an upward variance based on the harm caused by fentanyl and other opioids); and then citing *United States* v.

*Armond*, 135 F.4th 626, 628–29 (8th Cir. 2025) (affirming an upward variance based on the dangers of heroin and fentanyl)).

The district court also described its disagreement with how the Guidelines treat fentanyl. "In other sentencings I've conducted," the district court said, "I've commented that the [G]uidelines['] treatment of fentanyl as less serious than methamphetamine is illogical[.]" RIII.47 (referencing its decision in *United States* v. *Jimenez-Marquez*, 750 F. Supp. 3d 1267 (D.N.M. 2024)). It further focused on "the drug amount" in Mr. Garley's case, observing that "if we were dealing with methamphetamine [instead of fentanyl]," Mr. Garley's advisory Guidelines range would be significantly higher. RIII.47.

Turning to the remaining § 3553(a) factors, the district court concluded that "a lengthy, lengthy sentence should be imposed to satisfy the sentencing factor dealing with adequate deterrence to criminal conduct." RIII.47–48; *see* 18 U.S.C. § 3553(a)(2)(B). In considering the need "[t]o protect the public from further crimes of [Mr. Garley,]" the district court recalled the "serious crime spree" that occurred "within a week" in New Mexico—including "a first[-]degree murder[,]" "aggravated assault resulting in great bodily injury[,]" and "possession with the intent to distribute a huge quantity of fentanyl." RIII.48.

11

Finally, the district court mentioned the unique nature of Mr. Garley's case. "[I]n terms of comparing defendants with similar records," it reasoned, "the [G]uidelines do not adequately take into account [Mr. Garley]'s conduct, because he shot and killed a child and permanently injured the child's mother in a gang-related event in one week, and then was distributing a huge quantity of fentanyl the next week, within seven days." RIII.48.

Based on this reasoning, the district court imposed a 240-month term of imprisonment followed by five years of supervised release. The district court recognized its "inherent authority" to determine whether the sentence should be imposed to run consecutively or concurrently, RIII.49 (citing *Setser* v. *United States*, 566 U.S. 231 (2012)), and ordered that Mr. Garley's federal sentence "shall run consecutive to [the] yet to be imposed state court sentence." RIII.49.

After the district court announced Mr. Garley's sentence, it asked the parties if they had anything further. "Nothing from the United States," the prosecutor said, "other than I would just ask on the record if [Mr. Garley] has any objection to the adequacy of the [c]ourt's explanation [with respect] to any aspect of the sentencing decision." RIII.50. The district court noted Mr. Garley's "objection to the sentence imposed" and asked defense counsel whether, "in terms of explanations offered for the sentence," there was

"anything further [he] believe[d] [was] required[.]" RIII.50. "No," defense counsel responded, but "to preserve [his] client's appellate rights," he reiterated Mr. Garley's "position is [that] this [sentence] is substantively unreasonable." RIII.50.

This timely appeal followed.

## II

"[A]ppellate review for reasonableness includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *United States* v. *Smart*, 518 F.3d 800, 803 (10th Cir. 2008). Mr. Garley challenges his 240-month sentence as procedurally and substantively unreasonable. We address each issue and affirm.

## A

Mr. Garley first contends the district court was required to impose a concurrent—not consecutive—sentence under U.S.S.G. § 5G1.3(c). A defendant's claim that "his consecutive sentence is the product of the district court's improper application of the Guidelines" is a challenge directed to the "procedural reasonableness" of the sentence. *United States* v. *Finnesy*, 953 F.3d 675, 688 (10th Cir. 2020) (considering the district court's alleged failure to apply U.S.S.G. § 5G1.3(b) as a procedural

13

reasonableness error). Ordinarily, "we review legal questions regarding the application of the Sentencing Guidelines *de novo*, and a district court's factual findings are reviewed only for clear error[.]" *United States* v. *Iley*, 914 F.3d 1274, 1278 (10th Cir. 2019) (emphasis added) (internal quotation marks omitted). "[W]hen a defendant fails to preserve an objection to the procedural reasonableness of his sentence, we review only for plain error." *United States* v. *Martinez-Barragan*, 545 F.3d 894, 899 (10th Cir. 2008).

Mr. Garley acknowledges he forfeited his § 5G1.3(c) argument before the district court. That is, Mr. Garley "did not adequately alert the district court that its proposed decision to run his federal sentence consecutively to his state sentence might contravene" § 5G1.3(c). *Finnesy*, 953 F.3d at 690. He appropriately proceeds on appeal under the plain error framework.

Plain error is a "demanding standard," *United States* v. *McGehee*, 672 F.3d 860, 876 (10th Cir. 2012), and "intentionally difficult to satisfy[,]" *United States* v. *Paycer*, 154 F.4th 1261, 1271 (10th Cir. 2025). To prevail on plain error review, Mr. Garley must show (1) error, (2) that is plain, which (3) affects substantial rights, meaning there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different[,]" and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States* v. *Benally*, 19 F.4th 1250, 1256 (10th Cir. 2021) (quoting *Greer* v. *United States*, 593 U.S. 503,

14

507–08 (2021)). "Failure to establish any one of these elements precludes reversal." *United States* v. *Romero*, 132 F.4th 1208, 1218 (10th Cir. 2025). "[T]he burden of establishing entitlement to relief for plain error is on the defendant claiming it[.]" *United States* v. *Dominguez Benitez*, 542 U.S. 74, 82 (2004).

### 1

We conclude Mr. Garley fails at the outset. He has not shown error, let alone *plain* error, in the district court's alleged failure to apply § 5G1.3(c). That provision, titled "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment," provides:

> If subsection (a) does not apply,[4] and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.

U.S.S.G. § 5G1.3(c) (2024) (footnote added).[5] Section 1B1.3, in turn, provides:

---

[4] Subsection (a) only applies when "the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment[.]" U.S.S.G. § 5G1.3(a). This provision does not apply to Mr. Garley's sentence, and nobody says otherwise.

[5] We use the 2024 Guidelines in effect when Mr. Garley was sentenced in April 2025. *See United States* v. *Sullivan*, 255 F.3d 1256, 1259 (10th Cir.

15

(a) CHAPTERS TWO (OFFENSE CONDUCT) AND THREE (ADJUSTMENTS)—Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

   (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

      (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—

         (i) within the scope of the jointly undertaken criminal activity,

         (ii) in furtherance of that criminal activity, and

         (iii) reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

   (2) solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

---

2001) (noting "a sentencing court must apply the guidelines in effect at the time of sentencing . . . unless such application would violate the *ex post facto* clause"); U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). But we note the November 2025 amendments to the Guidelines did not change the provisions applicable to this appeal.

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4) any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a).

Mr. Garley argues his state convictions qualified as "relevant conduct" to his federal fentanyl offense under § 1B1.3, so the district court should have granted him "the benefit of U.S.S.G. § 5G1.3's direction to impose sentences based on relevant conduct concurrent to one another." Op. Br. at 2. Rather than apply § 5G1.3, as Mr. Garley claims was required, the district court mistakenly treated his state offenses as part of his criminal history under U.S.S.G. § 4A1.2.

To reach the issue at the core of his procedural reasonableness challenge, Mr. Garley has to demonstrate § 5G1.3 was even implicated, and to do that, he first must show the district court plainly erred in treating his state convictions as criminal history under § 4A1.2 rather than as relevant conduct under § 1B1.3.[6] On the record before us, he cannot make this showing.

---

[6] It is unclear which parts of § 1B1.3 Mr. Garley actually invokes. In his opening brief, he focuses on subsection (a)(2). But in his reply brief, he also references subsection (a)(1). Like the government, we will broadly construe Mr. Garley's argument as invoking both subsections (a)(1) and (a)(2).

17

To explain why, we first discuss "the interplay between criminal history and relevant conduct[.]" *United States* v. *Caldwell*, 128 F.4th 1170, 1176 (10th Cir. 2025). Criminal history refers "to a defendant's *past* criminal conduct (as evidenced by conviction and prison terms)[.]" *Witte* v. *United States*, 515 U.S. 389, 405 (1995) (emphasis in original) (citing U.S.S.G. § 4A1.1). "[P]ast criminal convictions are generally treated as an offender characteristic, and taken into account by assigning a criminal history score." *United States* v. *Allen*, 488 F.3d 1244, 1254 (10th Cir. 2007); *see* U.S.S.G. § 4A1.1(a)–(e) (assigning criminal history points based on the length of the sentence the defendant received for each prior conviction). A criminal history score yields a category that is "defined according to the defendant's 'prior sentence[s],' which in turn [are] defined as 'any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense.'" *Allen*, 488 F.3d at 1254 (ellipsis in original) (quoting U.S.S.G. § 4A1.2(a)(1)).

In contrast, relevant conduct "does not accrue criminal history points." *Caldwell*, 128 F.4th at 1176. Relevant conduct is "[c]onduct that is part of the instant offense . . . under the provisions of §1B1.3 (Relevant Conduct)." U.S.S.G. § 4A1.2 cmt. n.1. "A correct determination of whether the prior sentence constituted relevant conduct is an essential predicate to the criminal history assessment." *United States* v. *Torres*, 182 F.3d 1156,

1160 (10th Cir. 1999). As our precedent recognizes, "the district court's overarching delineation of relevant conduct" is "configured by key factual findings[.]" *See United States* v. *D.A.*, 132 F.4th 1163, 1175 (10th Cir. 2025).

Keeping these principles in mind, we conclude Mr. Garley's argument proceeds from a mistaken premise. He assumes the district court "effectively treated his state crimes as relevant conduct" under § 1B1.3 but failed to "formally classify them as such[.]" Op. Br. at 2. There is no support in the record for this assertion.

*First*, Mr. Garley acknowledges the PSR treated his state offenses as part of the criminal history score. The PSR assigned Mr. Garley one criminal history point for his September 2023 state offenses. It correctly cited U.S.S.G. §§ 4A1.1(c) and 4A1.2(a)(4) in support of its determination.

*Second*, in adopting the unobjected-to PSR at sentencing, the district court expressly referred to Mr. Garley's state offenses as part of his criminal history. The district court even observed Mr. Garley would have received more criminal history points for the state offenses—putting him into a higher criminal history category (II) and higher advisory Guidelines range (121 to 151 months)—had he already been sentenced in state court.[7] The

---

[7] If Mr. Garley had been sentenced in state court before his federal sentencing, U.S.S.G. § 4A1.2(a)(4) would not apply, and Mr. Garley would be assigned criminal history points based on the length of his state sentence. The Guidelines assign a maximum of "3 points for each prior sentence of

district court considered whether Mr. Garley's "entire history, including his criminal history, supports any variance[.]" RIII.45 (citing *Vazquez-Garcia*, 130 F.4th 891). It was in this context that the district court announced Mr. Garley's "state court convictions, including first[-]degree murder for the shooting . . . support[ed] an upward variance." RIII.45.

Mr. Garley's contrary reading of the record is unconvincing. He first contends the district court must have treated the state offenses as relevant conduct because the court asked the prosecutor if the state-court victims were planning to appear at the federal sentencing.[8] The prosecutor answered, "I don't think there are victims attributed to this part of the [federal] charge[,]" but confirmed there were victims in the state case. RIII.29. Based on this exchange, Mr. Garley assumes "both the court and the government viewed the state conduct as part and parcel of the federal crime" and "intimately connected with the instant offense and relevant to

---

imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). Because Mr. Garley was expected to receive a life sentence for his first-degree murder conviction in state court, the district court correctly reasoned he would have been assigned three criminal history points. With three criminal history points, Mr. Garley would have been in criminal history category II, with an advisory Guidelines range of 121 to 151 months' imprisonment. *See id.* ch. 5, pt. A (sentencing table).

[8] Mr. Garley is referencing the district court's inquiry at the start of the sentencing hearing about whether there had been any "requests for victim allocution statements[.]" RIII.29.

sentencing[.]" Op. Br. at 13. We cannot agree. Nothing about this colloquy suggests the district court effectively treated Mr. Garley's state case as relevant conduct. Rather, as the government points out, "the court and prosecutor believed that the state-court victims might naturally be interested in learning what federal sentence [Mr.] Garley received[.]" Ans. Br. at 18.

Next, Mr. Garley argues the district court must have treated the state crimes as relevant conduct because it referred to the shooting when describing "the facts in this case" at sentencing. Op. Br. at 13 (quoting RIII.45). We again disagree. To be sure, the district court discussed how Mr. Garley was arrested while transporting a large quantity of fentanyl and observed that, about a week earlier, he had shot and killed an 11-year-old boy. *See* RIII.45–46. At most, this shows the district court correctly understood the state and federal offenses occurred a week apart—a fact no one disputes. It does not mean, as Mr. Garley argues, the district court understood the federal offense "as a continuation of the conduct forming the bases of the state charges." Op. Br. at 13.

Finally, Mr. Garley says the district court referred to the state and federal criminal conduct as "a serious crime spree within a week[,]" RIII.48, so that must mean it was referencing the Guidelines commentary describing relevant conduct as "part of a single episode[,] spree, or ongoing series of

21

offenses." Op. Br. at 13–14 (quoting U.S.S.G. § 1B1.3 cmt. n.5(B)(ii)).[9] Mr. Garley's position is not well taken. In the abstract, the district court's reference to a crime spree could contemplate temporal proximity—one of the factors under § 1B1.3(a)(2). *See United States* v. *Damato*, 672 F.3d 832, 839 (10th Cir. 2012) (explaining, that in determining relevant conduct, "[w]e consider 'the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.'" (quoting U.S.S.G. § 1B1.3 cmt. n.9(B) (2009)).[10] Nothing in the record supports the interpretation Mr. Garley advances. Further undermining Mr. Garley's argument, the district court did not consider the remaining two factors: "the degree of similarity of the offenses" or "the regularity (repetitions) of the offenses[.]" *See* U.S.S.G. § 1B1.3 cmt. n.5(B)(ii). Indeed, the district court made no factual findings to support a relevant conduct determination because it appropriately understood the state convictions as criminal history.

---

[9] Mr. Garley mistakenly attributes this language to "U.S.S.G. § 1B1.2(a)(2), comment. (n.5)." Op. Br. at 14. Section 1B1.2 does not have a subsection (a)(2). Nor does it have an Application Note 5. We assume Mr. Garley meant to cite § 1B1.3 and Application Note 5(B)(ii).

[10] In *Damato*, we cited an earlier version of the Guidelines that had codified the relevant commentary language under Application Note 9(B) of § 1B1.3. The text of what was then Application Note 9(B) is identical to the text of what is now Application Note 5(B)(ii).

**2**

It is hardly obvious the district court *should* have treated Mr. Garley's state offenses as relevant conduct—to trigger § 5G1.3(c)—instead of as criminal history under § 4A1.2. *See, e.g., United States* v. *Hood*, 615 F.3d 1293, 1301 (10th Cir. 2010) (holding that "[e]ven if we assume[d] arguendo" the district court erred, the defendant could not "establish that such error [was] plain" (internal quotations marks omitted)). "[A]n error is plain if it is 'clear or obvious under current, well-settled law,' meaning 'either the Supreme Court or this court [has] addressed the issue.'" *United States* v. *Flechs*, 98 F.4th 1235, 1254 (10th Cir. 2024) (second alteration in original) (quoting *United States* v. *Brooks*, 736 F.3d 921, 930 (10th Cir. 2013)). "[E]ven where there is no such precedent, we may find plain error where the district court has engaged in a clearly erroneous application of statutory law." *United States* v. *Story*, 635 F.3d 1241, 1248 (10th Cir. 2011) (internal quotation marks omitted); *see also Caldwell*, 128 F.4th at 1175 ("The guidelines are interpreted as though they were a statute or court rule, with ordinary rules of statutory construction." (internal quotation marks omitted)). "But no matter the source relied on, the error must be so clear or obvious that it could not be subject to any reasonable dispute." *United States* v. *Johnson*, 157 F.4th 1309, 1321 (10th Cir. 2025) (emphasis and internal quotation marks omitted).

Mr. Garley does not meaningfully develop any appellate argument on plainness. In his opening brief, he simply asserts, "[t]he district court's error was plain." Op. Br. at 19. In support, he offers a single sentence: "The state conduct qualifies as relevant to the offense of conviction under the plain language of the [G]uidelines, underscored by the district court's consideration of it as such." Op. Br. at 19. The government urges waiver as to the plainness prong "because [Mr.] Garley does not identify the language in the Guidelines that he believes 'clearly settles the question' or explain why he thinks it does so." Ans. Br. at 23 (quoting *United States* v. *Jones*, 74 F.4th 1065, 1070 (10th Cir. 2023)). Mr. Garley does not respond to the government's argument or otherwise address plainness in his reply brief. Under these circumstances, we could resolve this issue on waiver grounds. *See United States* v. *Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that arguments inadequately briefed in the opening brief are waived." (brackets and internal quotation marks omitted)). In any event, Mr. Garley cannot prevail on the merits.

The plain language of §§ 1B1.3(a)(1) and (a)(2) does not obviously resolve whether Mr. Garley's state offenses were relevant conduct to his federal offense. As the government persuasively explains, "[b]oth provisions contain general standards that a district court must apply to a wide variety

24

of specific factual scenarios." Ans. Br. at 23. We address each provision in turn.

Under § 1B1.3(a)(1), an offense could be understood as relevant conduct if it occurred "during[,]" "in preparation for[,]" or "in the course of attempting to avoid detection or responsibility for" the instant federal offense. U.S.S.G. § 1B1.3(a)(1). We have held that for a state offense to qualify as relevant conduct under § 1B1.3(a)(1), it "must relate to the offense of conviction." *Caldwell*, 128 F.4th at 1179; *see also id.* at 1175 ("The Guidelines' text and commentary, the purposes for relevant conduct and criminal history guidelines, and cases from this and other circuits show that relevant conduct consists of acts or omissions that occurred not only during the offense of conviction but also *relate to that offense*." (emphasis added)). But "[o]ne criminal act does not become 'relevant' to a second act under the Guidelines by the bare fact of temporal overlap." *Id.* at 1181 (quoting *United States* v. *Wernick*, 691 F.3d 108, 115 (2d Cir. 2012)).

On appeal, the parties agree the state and federal offenses are temporally proximate. Mr. Garley does not explain how his state conviction otherwise "relates to" his federal offense. Just the opposite: Mr. Garley acknowledges his state and federal crimes "are very different[.]" Op. Br. at 15. We thus cannot say Mr. Garley's state offenses obviously relate to his federal fentanyl offense under § 1B1.3(a)(1).

25

Under § 1B1.3(a)(2), an offense could be understood as relevant conduct if it was part of the "same course of conduct" or "common scheme or plan" as the instant federal offense.[11] U.S.S.G. § 1B1.3(a)(2). Two offenses might qualify as part of the "same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3 cmt. n.5(B)(ii). When determining whether an offense is part of the same course of conduct, "each case depends largely on its own facts." *United States* v. *Garcia*, 946 F.3d 1191, 1204 (10th Cir. 2020) (internal quotation marks omitted). Three factors are relevant to that determination: "[1] the degree of similarity of the offenses, [2] the regularity (repetitions) of the offenses, and [3] the time interval between the offenses." *Damato*, 672 F.3d at 839 (quoting U.S.S.G. § 1B1.3 cmt. n.9(B)); *see* U.S.S.G. § 1B1.3 cmt. n.5(B)(ii). "When one of the [three] factors is absent, a stronger presence of at least one of the other factors is required." U.S.S.G. § 1B1.3 cmt. n.5(B)(ii);

---

[11] Whether two offenses constitute the "same course of conduct" and "common scheme or plan" are distinct inquiries. *See Damato*, 672 F.3d at 839 ("Our circuit has distinguished between the phrases 'same course of conduct' and 'common scheme or plan.'"). Mr. Garley does not contend his state offenses and federal offense were part of a "common scheme or plan." Nor could he. To "constitute part of a common scheme or plan," the two offenses "must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3 cmt. n.5(B)(i). The record here does not evince any common factors.

*see Damato*, 672 F.3d at 839–40 (describing this as a "sliding scale" approach).

As discussed, Mr. Garley's state and federal offenses are entirely different, so these offenses do not plainly satisfy the "similarity" or "regularity" factors. *See* U.S.S.G. § 1B1.3 cmt. n.5(B)(ii) (explaining the "similarity" factor looks to "the degree of similarity of the offenses"); *Damato*, 672 F.3d at 841 ("To determine whether regularity is present, we inquire whether there is evidence of a regular, i.e., repeated, pattern of *similar* unlawful conduct between the purported relevant conduct and the offense of conviction." (emphasis added) (internal quotation marks omitted)). We therefore cannot say the district court plainly erred in not considering the state offenses as relevant conduct under § 1B1.3(a)(2).

Finally, our decision in *Finnesy* is particularly instructive in support of affirmance. There, we considered whether the district court plainly erred at sentencing by not imposing concurrent sentences under § 5G1.3(b).[12] 953 F.3d at 682, 688. We resolved the defendant's appeal on prong two—failure to show plainness. *See id*. at 688, 691–98. "[O]n the record before the district court," we concluded, "it hardly would have been clear or obvious that the

---

[12] Section 5G1.3(b) similarly contemplates imposing concurrent terms of imprisonment for relevant conduct, but where "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction[.]" U.S.S.G. § 5G1.3(b).

27

state offenses underlying [the defendant]'s undischarged state sentence were relevant conduct . . . within the meaning of subsection (a)(1), (a)(2), or (a)(3) of § 1B1.3." *Id.* at 694. "The PSR left virtually no room for doubt that it did *not* consider [the defendant]'s state offenses to be relevant conduct." *Id.* It assigned the defendant criminal history points for the offenses, which it would not have done if it considered the offenses relevant conduct. *See id.* at 693 (citing *Torres*, 182 F.3d at 1159 (noting that "a prior sentence counts as criminal history if it does *not* involve relevant conduct under § 1B1.3")). "And, importantly, [the defendant] raised no objections to the contents of the PSR, meaning that the district court would not have been alerted to any concerns regarding the PSR's assessment of the scope of relevant conduct." *Id.* at 694–95 (internal citation omitted). So too here, as our discussion above illustrates.

We thus discern no plain error under U.S.S.G. § 5G1.3(c) in the district court's decision to run the sentence on Mr. Garley's fentanyl offense consecutive to his yet-to-be imposed state sentence.

**B**

Mr. Garley also argues his 240-month sentence is substantively unreasonable because "[t]he district court did not articulate [a] sufficient justification for its dramatic upward variance." Op. Br. at 23 (heading format omitted). In his view, "[t]he district court's primary justification" for

28

the length of the sentence was its concern about the "dangerousness of fentanyl," but Mr. Garley claims the court did not adequately explain this rationale. Op. Br. at 23 (quoting RIII.46). We readily reject this argument.

**1**

"[S]ubstantive reasonableness review broadly looks to whether the district court abused its discretion in weighing permissible § 3553(a) factors in light of the 'totality of the circumstances.'" *United States* v. *Sayad*, 589 F.3d 1110, 1118 (10th Cir. 2009) (quoting *Gall* v. *United States*, 552 U.S. 38, 51 (2007)); *see also United States* v. *Williams*, 10 F.4th 965, 977 (10th Cir. 2021) ("We review substantive reasonableness for an abuse of discretion."). On appeal, "[w]e do not reweigh the sentencing factors[.]" *United States* v. *Blair*, 933 F.3d 1271, 1274 (10th Cir. 2019). Rather, "[w]e will defer to the district court's judgment so long as it falls within the realm of rationally available choices." *United States* v. *Ware*, 93 F.4th 1175, 1180 (10th Cir. 2024) (ellipsis and internal quotation marks omitted). We recognize a "rebuttable presumption of reasonableness" only when a sentence is within—not outside—a properly calculated Guidelines range. *United States* v. *Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (*per curiam*).

In assessing substantive reasonableness, we closely review the sentencing court's explanation for the length of the sentence imposed. *See United States* v. *Barnes*, 890 F.3d 910, 917 (10th Cir. 2018). "A sentence is

more likely to be within the bounds of reasonable choice when the court has provided a cogent and reasonable explanation for it." *Id.* A "major variance[,]" we have explained, "should be supported by a more significant justification than a minor one." *United States* v. *Cookson*, 922 F.3d 1079, 1092 (10th Cir. 2019) (brackets omitted) (quoting *Gall*, 552 U.S. at 50); *see, e.g.*, *United States* v. *Rocha*, 145 F.4th 1247, 1275 (10th Cir. 2025) ("assum[ing] . . . for purposes of [the court's] analysis that the" 100 percent upward variance "was significant"); *United States* v. *Guevara-Lopez*, 147 F.4th 1174, 1180–81, 1192 (10th Cir. 2025) (considering a 100 percent upward variance to be "major").

We have recognized "a blurring of the line between procedural and substantive reasonableness when it comes to the district court's explanation for a given sentence." *Cookson*, 922 F.3d at 1090; *see also Crosby*, 119 F.4th at 1248 (acknowledging the "murky nature of the distinction between procedural and substantive reasonableness when a challenge is based on the district court's explanation of the § 3553(a) factors" (internal quotation marks omitted)); *Guevara-Lopez*, 147 F.4th at 1183 (explaining how "[t]he district court's explanation implicates both procedural and substantive reasonableness"). Our precedent also provides clarity on this front: "[W]e rely on the district court's procedurally-required explanation in order to conduct meaningful appellate review of a sentence's substantive

30

reasonableness. A limited, brief, or inconsistent explanation hinders our ability to do so, and therefore puts at risk the substantive reasonableness of any decision the district court reached." *Cookson*, 922 F.3d at 1091 (brackets, internal quotation marks, and citations omitted). To synthesize, when substantive reasonableness is at issue, we consider the district court's explanation not in service of its procedural duty "to adequately explain the chosen sentence[,]" *Gall*, 552 U.S. at 51, but in terms of our appellate duty to meaningfully review the length of the sentence imposed.[13] *See Barnes*,

---

[13] It bears repeating that when the challenge on appeal implicates a district court's duty to explain the sentence under *Gall*, we will not forgo our usual understanding that procedural reasonableness challenges are subject to ordinary principles of waiver and forfeiture. *See Gall*, 552 U.S. at 51 ("[T]he appellate court . . . must first ensure that the district court committed no significant procedural error, such as . . . failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."). We remind defense counsel that a "defendant need not object after pronouncement of sentence based on substantive reasonableness." *United States* v. *Jackson*, 82 F.4th 943, 949 (10th Cir. 2023) (internal quotation marks omitted); *Holguin-Hernandez* v. *United States*, 589 U.S. 169, 174–75 (2020) ("A defendant who, by advocating for a particular sentence, communicates to the trial judge his view that a longer sentence is 'greater than necessary' has thereby informed the court of the legal error at issue in an appellate challenge to the substantive reasonableness of the sentence."). But procedural reasonableness challenges, by contrast, generally will require a contemporaneous objection to avoid being reviewed for plain error. *United States* v. *Chavez-Morales*, 894 F.3d 1206, 1213 (10th Cir. 2018) ("[T]o preserve a procedural reasonableness challenge based on the sentencing court's failure to consider and explain its reasons for rejecting a defendant's argument for a lesser sentence, the defendant needed to alert the court that its explanation was inadequate, which ordinarily would require an objection after the court had rendered sentence." (internal quotation marks omitted)).

31

890 F.3d at 924 (Bacharach, J., dissenting) (observing that, when conducting substantive reasonableness review, "we are not considering the adequacy of the district court's *explanation*. Instead, we are considering the adequacy of the sentences themselves"). We proceed with this understanding.

2

a

Mr. Garley first contends his above-Guidelines sentence is substantively unreasonable because the district court "did not adequately explain its significant variance upward[.]"[14] Op. Br. at 2. Mr. Garley's 240-month sentence is 100 percent higher than the top of the advisory Guidelines range, so it can fairly be described as a major variance. And it is obviously outside the Guidelines range, so it is not subject to a rebuttable

---

[14] In his opening brief, Mr. Garley briefly asserts "[t]he district court's explanation implicates both procedural and substantive reasonableness, because the explanation is a procedural requirement and is relevant to whether the length of the sentence is substantively reasonable." Op. Br. at 21 (quoting *Guevara-Lopez*, 147 F.4th at 1183). But at oral argument, counsel clarified Mr. Garley was not advancing "a procedural challenge," but only taking "issue with the substance of the explanation." Oral Arg. at 12:47–:58. To the extent Mr. Garley attempts to raise a procedural challenge based on the failure to explain the sentence, such an argument is waived. *United States* v. *Bradley*, 97 F.4th 1214, 1221 (10th Cir. 2024) ("When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise." (internal quotation marks omitted)).

presumption of reasonableness. Still, we are not persuaded by Mr. Garley's argument.

Section 3553(a) instructs a sentencing judge to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in" the statute. 18 U.S.C. § 3553(a). To arrive at such a parsimonious sentence, a district court must make an individualized assessment by considering the following factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence to (a) "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense"; (b) "afford adequate deterrence," (c) "protect the public from further crimes of the defendant," and (d) provide rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) the Sentencing Commission's policy statements; (6) "the need to avoid unwarranted sentence disparities"; and (7) "the need to provide restitution[.]" *Id.*

Here, the district court said it had considered all the § 3553(a) factors and discussed most of them expressly at sentencing. In terms of the nature and circumstances of the offense, the district court stated that fentanyl is a particularly "dangerous[]" drug. RIII.46; 18 U.S.C. § 3553(a)(1). The district court thoroughly explained its opinion that the Guidelines do not

33

adequately account for the "dangerousness of fentanyl." *See* RIII.46–47. It cited several cases from other circuits endorsing the imposition of an upward variance based on the dangers of fentanyl and its own prior decision elaborating on the Guidelines' "illogical" and asymmetrical treatment of fentanyl and methamphetamine. RIII.46–47. Based on this policy disagreement, the district court observed the higher Guidelines range that would have applied if Mr. Garley had possessed an equal amount of methamphetamine as one data point in its holistic evaluation.[15]

The district court discussed Mr. Garley's history and characteristics and appeared particularly concerned with protecting the public from Mr. Garley's crimes because of his "serious crime spree within a week[.]" RIII.48; *see* 18 U.S.C. § 3553(a)(2)(C). It also recognized the Guidelines "do not adequately take into account" the unique circumstances of Mr. Garley's case. RIII.48; *see* 18 U.S.C. § 3553(a)(6). Under these circumstances, the

---

[15] Mr. Garley frames the district court's reference to the methamphetamine guidelines as a "substitution," suggesting the district court actually used the analogous methamphetamine Guidelines range to calculate his sentence but failed to account for his three-level reduction for acceptance of responsibility. Reply Br. at 2, 7. To the extent Mr. Garley is suggesting the district court miscalculated his advisory Guidelines range, that would be a procedural error, but such a challenge is forfeited because he did not raise it before the district court and waived because he does not seek plain error review on appeal. *See Bradley*, 97 F.4th at 1221. Even if preserved, Mr. Garley's position is meritless. This is not a case where the "district court essentially abandoned consideration of the advisory guidelines range and substituted a [different] calculation[.]" *Allen*, 488 F.3d at 1259.

district court's reason for imposing an upward variance is obvious from the sentencing transcript and squarely supports the length of the sentence imposed.

**b**

Mr. Garley next insists the district court's "broad disagreement with the fentanyl guideline" fails to justify the upward variance. Reply Br. at 1. We disagree. "[T]he district court need not afford equal weight to each § 3553(a) factor[.]" *Cookson*, 922 F.3d at 1094; *see also United States* v. *Lopez-Macias*, 661 F.3d 485, 492 (10th Cir. 2011) (explaining courts "should engage in a holistic inquiry" when considering the statutory sentencing factors (internal quotation marks omitted)). "[N]o algorithm exists that instructs the district judge how to combine the factors or what weight to put on each one." *Barnes*, 890 F.3d at 916. Of course, a district court should not solely rely on just "one § 3553(a) factor without addressing other relevant factors." *Crosby*, 119 F.4th at 1247. That is not what happened here, as we have discussed. Mr. Garley's argument amounts to mere "disagree[ment] with the way in which the district court weighed the 18 U.S.C. § 3553(a) sentencing factors[.]" *United States* v. *DeRusse*, 859 F.3d 1232, 1240 (10th Cir. 2017). We will not reweigh the sentencing factors on appeal. *See United States* v. *Lawless*, 979 F.3d 849, 856 (10th Cir. 2020) (refusing to "reweigh

the district court's balancing of the § 3553(a) factors . . . because reweighing the factors is beyond the ambit of our review").

In sum, the district court "rested its sentence on the appropriate considerations[,]" *Kimbrough* v. *United States*, 552 U.S. 85, 111 (2007), and correctly framed its final determination in line with § 3553(a)'s overarching instruction to "impose a sentence sufficient, but not greater than necessary," to accomplish the statutory sentencing goals, 18 U.S.C. § 3553(a). We reject Mr. Garley's substantive reasonableness challenge.

**III**

We **AFFIRM** Mr. Garley's sentence.

25-2060, *United States v. Garley*

**HARTZ**, J., concurring

I fully join Judge Rossman's opinion. I write separately only to note that the Supreme Court opinion that has been read as saying that claims of substantive reasonableness need not be preserved does not really say that. The final paragraph of *Holguin-Hernandez v. United States*, 589 U.S. 169, 175 (2020), says that the government and amicus:

> ask us to decide when a party has properly preserved the right to make particular arguments supporting its claim that a sentence is unreasonably long. We shall not consider these matters, however, for the Court of Appeals has not considered them. We hold only that the defendant here properly preserved the claim that his 12-month sentence was unreasonably long by advocating for a shorter sentence and thereby arguing, in effect, that this shorter sentence would have proved 'sufficient,' while a sentence of 12 months or longer would be 'greater than necessary' to 'comply with' the statutory purposes of punishment.

Thus, that opinion leaves open, for example, whether Defendant's argument that the district court's disagreement with the fentanyl guidelines rendered the sentence substantively unreasonable was a "particular argument" that needed to be preserved below—even if it is characterized as a substantive-reasonableness (rather than a procedural-reasonableness) argument.